**Richard S. BUSH, Petitioner,**

v.

**OFFICE OF PERSONNEL MANAGEMENT, Respondent.**

No. 02–3304.

United States Court of Appeals, Federal Circuit.

Jan. 14, 2003.

---

Patricia M. McCarthy, Senior Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, for respondent. With her on the brief were Robert D. McCallum, Jr., Assistant Attorney General; David M. Cohen, Director; and Todd M.

Hughes, Assistant Director. Of counsel was Deborah A. Bynum, Attorney.

Before MAYER, Chief Judge, FRIEDMAN, Senior Circuit Judge, and RADER, Circuit Judge.

FRIEDMAN, Senior Circuit Judge.

The petitioner Richard S. Bush challenges the decision of the Merit Systems Protection Board ("Board") that it did not have jurisdiction over an appeal from the Office of Personnel Management ("OPM")'s decision to suspend the examination process for selection of Administrative Law Judges because the suspension is not an "employment practice" under the regulations governing the Board's jurisdiction. We hold that it is an "employment practice" and therefore reverse and remand.

I

Administrative law judge ("ALJ")s are selected through a four-step examination process administered by OPM. 5 C.F.R. § 930.203 (2002). OPM conducts periods of "open competition" in which it accepts applications for the position. *Id.* § 930.203(a). An applicant who obtains a passing score is placed on OPM's ALJ register. This register is provided to government agencies for filling vacant ALJ positions. *Id.* §§ 930.203, 930.203a.

Bush submitted to OPM the first portion of the examination for an ALJ position. Shortly thereafter, in another case the Board held that the mathematical formula OPM used to score ALJ examinations was invalid. It affirmed the Chief Administrative Judge's order to OPM "to discontinue use of the formula and to insure that no additional persons were appointed as ALJs on the basis of scores derived from the formula," and to recalculate the scores of applicants already on the register using the method in place prior to the invalidated method. *Azdell v. Office of Pers.*
*Mgmt.,* 87 M.S.P.R. 133, 146 (2000), *reconsideration denied and original decision aff'd,* 89 M.S.P.R. 88 (2001). An appeal in that case is pending before this court. *Meeker v. Merit Sys. Prot. Bd.,* Docket Nos. 01–3057, 02–3042.

OPM suspended its examination process. OPM also decided (1) to develop a new ALJ examination, (2) to discontinue use of the old examination, and (3) to refuse to accept new applications pending a new examination. OPM notified Bush of this plan, telling him he could not complete the examination process under the old examination because he had completed only the first portion of it.

Bush filed an appeal with the Board challenging OPM's refusal to allow him to complete the ALJ examination. He contended that OPM's suspension of the examination process was an "employment practice" under 5 C.F.R. §§ 300.101, 300.104(a), which the Board had jurisdiction to review. In his initial decision, which became final when the Board refused to review it, the administrative judge dismissed Bush's appeal for lack of jurisdiction. It "f[ou]nd that the term 'employment practice,' within the meaning of 5 C.F.R. § 300.101, does not include suspending an examination and the processing of applications thereunder while a new examination is developed." The Board stated that the delay pending the development of a new examination "is inherent in the regulatory process and is not itself an affirmative act or employment practice."

II

The sole issue before us is whether the Board correctly held that it lacked jurisdiction over Bush's appeal from OPM's suspension of the ALJ examination and its refusal to process Bush's application until it had promulgated a new examination. The answer turns on whether that action

by the Board was an "employment practice" under the governing regulations. Bush devotes a considerable portion of his brief to arguing that because the error the Board found in the ALJ examination in the *Azdell* case related only to the scoring of the test, OPM improperly undertook to revise the entire examination. That contention, however, involves the merits of his claim and is not properly before us.

"The Board's jurisdiction is not plenary; rather, it is limited to actions designated as appealable to the Board 'under any law, rule, or regulation.'" *Prewitt v. Merit Sys. Prot. Bd.*, 133 F.3d 885, 886 (Fed.Cir.1998) (quoting 5 U.S.C. § 7701(a)). Bush has the burden of establishing the Board's jurisdiction. 5 C.F.R. § 1201.56(a)(2) (2002); *Link v. Dep't of Treasury*, 51 F.3d 1577, 1581 (Fed.Cir.1995).

OPM regulations provide:

> A candidate who believes that an employment practice which was applied to him or her by the Office of Personnel Management violates a basic requirement in § 300.103 is entitled to appeal to the Merit Systems Protection Board under the provisions of its regulations.

5 C.F.R. § 300.104(a) (2002).

"To satisfy his jurisdictional burden under that provision, ... [Bush] must show (1) that the actions in question constitute employment practices, and (2) that OPM is involved in the administration of those practices." *Prewitt*, 133 F.3d at 887. Since it was OPM that suspended further processing of Bush's application, the second prong of the jurisdictional standard was satisfied. The issue therefore is whether the "actions in question constitute employment practices." *Id.*

The regulations give the Board jurisdiction over

> Employment practices administered by the Office of Personnel Management to examine and evaluate the qualifications of applicants for appointment in the competitive service (5 C.F.R. § 300.104).

5 C.F.R. § 1201.3(a)(19) (2002).

The regulations define "employment practice" to "include[ ] the development and use of examinations, qualification standards, tests, and other measurement instruments." *Id.* § 300.101 (2002).

OPM's decision to develop a new ALJ examination comes squarely within the definition of "employment practice" that includes "the development and use of examinations." *Id.* The agency's suspension of further processing of existing applications until the new examination and standards have been adopted was ancillary to and an integral part of its undertaking to develop a new examination. OPM's decision to await that examination's completion before resuming the processing of applications involved the "use" of its new examination. The Board, of course, had ordered OPM to stop using the mathematical formula that had been a major element of the prior examination.

In *Dowd v. United States*, 713 F.2d 720 (Fed.Cir.1983), in reversing the Board's ruling that time-in-grade requirements were not an "employment practice," the court stated:

> The definition in section 300.101—'the term "employment practices" includes'—suggests a broad meaning. The term itself, "employment practices," has a naturally broad and inclusive meaning that would ordinarily embrace the application of time-in-grade restrictions. The definition is couched in inclusive language, which does not imply that anything within the natural meaning is excluded.

*Id.* at 723. The court also stated that "the inclusive definition of employment practices cannot reasonably be read to apply narrowly to tests alone." *Id.* at 724. "This court has held that 'employment

practice' is to be construed broadly and should not be restricted to the 'examinations, measurement tools, and qualifications relating to merit' referred to in 5 C.F.R. § 300.101." *Prewitt,* 133 F.3d at 887 (quoting *Maule v. Merit Sys. Prot. Bd.,* 812 F.2d 1396, 1399 (Fed.Cir.1987)); *see also Vesser v. Office of Pers. Mgmt.,* 29 F.3d 600, 603 (Fed.Cir.1994); *Dowd,* 713 F.2d at 723–24.

Under the broad and inclusive meaning of the term, OPM's suspension of the ALJ examination pending the adoption of a new examination was an "employment practice," that the Board has jurisdiction to review.

In ruling that OPM's action was not an "employment practice" the Board (speaking through its administrative judge) did not attempt to answer the foregoing analysis. Instead, it stated:

> To hold otherwise, would ignore the reality that the crafting of a new competitive examination which meets the basic requirements of 5 C.F.R. § 300.13, including a job analysis and a rational relationship between performance in the position to be filled and the employment practice used, takes time and professional development. 5 C.F.R. § 300(b)(1) ("The demonstration of rational relationship shall include a showing that the employment practice was professionally developed.") Such a delay is inherent in the regulatory process and is not itself an affirmative act or employment practice.

*Bush v. Office of Pers. Mgmt.,* No. DA–3443–01–0418–I–1, slip op. at 4 (Aug. 20, 2001).

This discussion, however, relates more to the merits of Bush's claim than to the jurisdictional issue the Board decided. We find it unconvincing.

## CONCLUSION

The decision of the Board dismissing Bush's appeal for lack of jurisdiction because OPM's challenged action is not an "employment practice" is reversed. The case is remanded to the Board for further proceedings consistent with this opinion.

*REVERSED AND REMANDED.*